**SUN NEWSPAPERS, INC.,**
**Plaintiff-Appellee,**

v.

**OMAHA WORLD–HERALD COMPANY,**
**Suburban Newspapers, Inc., Rapid**
**Printing and Mailing, Inc., Defendants-**
**Appellants.**

**No. 83–1802.**

United States Court of Appeals,
Eighth Circuit.

Aug. 11, 1983.

E. Terry Sibbernsen, Welsh, Sibbernsen & Roach, Omaha, Neb., Richard Orlikoff, Thaddeus S. Machnik, Frankel, McKay & Orlikoff, Chicago, Ill., Sheridan Morgan, Morris, Larson, King, Stamper & Bold, Kansas City, Mo., for plaintiff-appellee.

James L. Koley, McGill, Koley, Parsonage & Lanphier, P.C., Omaha, Neb., Henry P. Sailer, S. William Livingston, Jr., Edward J. Beder, Jr., Covington & Burling, Washington, D.C., for defendants-appellants.

Before HEANEY, ROSS and McMILLIAN, Circuit Judges.

PER CURIAM.

The defendants—Omaha World-Herald Company, Suburban Newspapers, Inc., and Rapid Printing and Mailing, Inc.—appeal from a district court order granting the motion of the plaintiff, Sun Newspapers, Inc., for a preliminary injunction.

World-Herald publishes the *Omaha World-Herald,* a daily newspaper which is the dominant publication of its type in the Omaha, Nebraska, area. The paper's circulation includes Douglas and Sarpy counties in Nebraska. Sometime in 1980, World-Herald, through its subsidiary Suburban, purchased the stock of Papillion Times Printing Company, which published several smaller newspapers and a "shopper" for distribution in Douglas and Sarpy counties. In mid-1981, World-Herald purchased the stock of Rapid Printers and Lithographers, Inc., and merged it with one of World-Herald's subsidiaries to form Rapid Printers and Mailers, Inc.

Sun publishés weekly newspapers and several shoppers circulated throughout Douglas and Sarpy counties. In November of 1982, Sun filed a complaint in the United States District Court for the District of Nebraska alleging that the defendants, and particularly World-Herald, violated Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18. Sun also moved for a preliminary

injunction to restrain the defendants from continuing the alleged violations pending a trial on the merits. In essence, Sun asserted that World-Herald's acquisition and control of Suburban and Rapid constituted an abuse of its monopoly power in the daily newspaper and local print advertising markets in Douglas and Sarpy counties, or at least could be viewed as mergers or corporate acquisitions tending to substantially lessen competition or to create a monopoly in a substantial portion of commerce. Sun alleged that World-Herald maintained its monopoly of local print advertising in Douglas and Sarpy counties by virtue of its acquisition and control of the other defendants. Specifically, Sun alleged that World-Herald virtually foreclosed any competition in the area of "marriage mailers," combined advertising circulars mailed directly to residences, since Rapid had been a large potential competitor in the marriage mailer field prior to its acquisition by World-Herald.

On the basis of Sun's complaint, stipulated facts, and an extensive evidentiary hearing, the district court granted Sun's motion for a preliminary injunction. It found that Sun had demonstrated probability of success on the merits of its section 2 (Sherman Act) claim by showing that World-Herald possessed a monopoly in the daily newspaper market in Douglas and Sarpy counties and used that monopoly power to gain competitive advantage in a related product market, local print advertising.

The court also found that Sun had demonstrated a probability of success on the merits of its section 2 claim on the alternative theory that World-Herald possessed a monopoly in the local print advertising market which it unlawfully maintained by acquiring Suburban and Rapid and using them to develop a marriage mailer named *Golden Courier.* The district court, however, rejected Sun's third section 2 theory regarding an attempt to monopolize because the evidence did not show the requisite intent to sustain such a theory. Finally, the court held that Sun had shown a probability of success on the merits of its section 7 (Clayton Act) claim because World-Herald's acquisitions of Suburban

and Rapid would tend to lessen competition in a substantial portion of commerce.

Having found that Sun established probability of success on the merits under three of its four asserted theories of antitrust liability and that it fulfilled the other prerequisites to preliminary injunctive relief, the district court granted the parties twenty days to submit "briefs and affidavits with respect to the makeup of the preliminary injunction" which the court intended to issue. The defendants appealed from the district court's order prior to the actual issuance of the preliminary injunction, and we deferred action on that appeal pending the district court's issuance of a preliminary injunction. The court filed the preliminary injunction on July 14, 1983. The court set a November 28, 1983, trial date. The defendants appeal.

After a careful consideration of the briefs and record up to this point, we hold that the district court did not err in granting the preliminary injunction. We modify the preliminary injunctive relief granted by the court, however, to preserve as nearly as possible the status quo which existed among the parties on the date of the district court's injunction of July 14, 1983. It being the intent of this Court that the defendants will not be permitted to serve advertisers not served prior to July 14, 1983, nor to provide different services to those they served prior to that date, section 1 of the preliminary injunction issued on that date shall be modified to read as follows:

1. Pending completion of the trial and entry of a final judgment, the defendants, all subsidiaries of any of the defendants, all subsequently acquired subsidiaries of any of the defendants, their officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise are prohibited:

A. From *soliciting clients for,* selling, printing, or distributing or causing to be *solicited,* sold, printed, or distributed any marriage mailer or similar total market

coverage vehicle, whether under the name of "Golden Courier" or otherwise, to all or substantially all households in Douglas and Sarpy Counties, Nebraska, or any subpart thereof; a "marriage mailer" or "similar total market coverage vehicle" is one that involves offering to advertisers distribution by mail of their advertisements in combination with such materials from other advertisers to all or substantially all households in all or selected zones of Douglas and Sarpy Counties, Nebraska; *provided that the defendants may continue to sell, print, and distribute and offer to sell, print, and distribute marriage mailers or other total market coverage vehicles for those advertisers for whom they have performed these services prior to July 14, 1983;*

B. From carrying on *or soliciting clients for* any nonsubscriber mailing operation, whether under the name of "Circulation Plus" or otherwise, whereby advertisements of advertisers which appear or are circulated with the *World-Herald* newspapers are mailed to all or substantially all households in Douglas and Sarpy Counties, Nebraska, or any subpart thereof, which do not subscribe to the *World-Herald* newspaper; provided that nothing herein shall be deemed to prevent the *World-Herald* newspaper from carrying on any such operation without assistance of or information received previously or hereafter from Rapid or Suburban or Ad-Net, Inc.; *further provided that such nonsubscriber mailing operations may be offered and provided to those advertisers for whom the defendants have performed these services prior to July 14, 1983;*

C. *From providing to those who advertised with the defendants prior to July 14, 1983, any additional marriage mailer or similar total market coverage services with respect to geographic area or zones of coverage;*

D. *From referring potential advertising clients to other parties restrained by this injunction in order to offer services or coverage that the referring party is unable to provide on its own;*

E. *From purchasing, leasing, or otherwise acquiring equipment which will permit any of the defendants to offer marriage mailer or similar total market coverage services to its advertisers which are greater in either nature or amount than those offered prior to July 14, 1983;*

F. *From discriminating in favor of any party restrained by this injunction in terms of services which are available to the public generally or in terms of the rates charged for such services.* [Emphasis added to new language.]

The remainder of the injunction is affirmed as issued.